engaging in sexual conduct with adults and being filmed. Thus, his victims were given the impression that this is acceptable conduct, aiding Brown in continuing to film them. In using the computer to desensitize his victims to deviant sexual activity, he was using it to solicit participation in that activity. This use of the computer fits well within the conduct that was contemplated by Congress, as well as within the wording of U.S.S.G. § 2G2.1(b)(3). Brown was indeed using the computer to "solicit participation by or with a minor in sexually explicit conduct for the purpose of producing sexually explicit material."

We **AFFIRM** the district court.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0016P (6th Cir.)
File Name: 01a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*          No. 99-1323

DANIEL BROWN,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00183—Gordon J. Quist, District Judge.

Argued: November 29, 2000

Decided and Filed: January 16, 2001

Before: RYAN and NORRIS, Circuit Judges; EDGAR,
Chief District Judge.[*]

_____

### COUNSEL

**ARGUED:** Robert J. Dunn, Bay City, Michigan, for Appellant. Richard S. Murray, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for

_____

[*] The Honorable R. Allan Edgar, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

Appellee. **ON BRIEF:** Robert J. Dunn, Bay City, Michigan, for Appellant. Richard S. Murray, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

EDGAR, Chief District Judge.    Daniel Duane Brown ("Brown") appeals from the sentence he received for producing and possessing child pornography.  The district court applied a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1, and a two-level increase under U.S.S.G. § 2G2.1(b)(3) because a computer was used to solicit participation by or with a minor in sexually-explicit conduct for the purpose of producing sexually-explicit material. We **AFFIRM**.

**I.**

On November 10, 1998, defendant Brown pled guilty without a plea agreement to three counts of producing child pornography for transportation in interstate commerce, 18 U.S.C. § 2251(a); one count of possessing child pornography using materials shipped in interstate commerce, 18 U.S.C. § 2252(a)(4)(B);[1] and a forfeiture count.  On March 5, 1999, the district court sentenced Brown to a total of 405 months imprisonment.  This sentence was within the calculated United States Sentencing Guidelines range.

_____

[1]The indictment and superseding indictment mistakenly cite 18 U.S.C. § 2252(a)(5)(B).

U.S.C. § 2252(a) (knowingly transporting or receiving visual depictions of child pornography in interstate commerce).  Pub. L. No. 104-71, 109 Stat. 774 (1995).  Pursuant to the Congressional directive, the Sentencing Commission then added computer use enhancements to the Guidelines for convictions under 18 U.S.C. §§ 2251(c)(1)(A) and 2252(a).  The Commission also added the enhancement at issue in this case, U.S.S.G. § 2G2.1(b)(3), which is used for convictions under related statutes, including 18 U.S.C. § 2251(a), under which Brown was convicted.  Legislative history contained in the House Report demonstrates the nature of Congress' concern about computer use in child pornography.

> Perhaps the most significant future of this bill is the direction to the United States Sentencing Commission to provide for an enhancement to the base offense levels in its guidelines in cases where the offender uses a computer to traffic in child pornography, or to distribute an advertisement seeking to buy or sell child pornography.  Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience.    Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute. *Additionally, the increasing use of computers to transmit child pornography substantially increases the likelihood that this material will be viewed by, and thus harm, children. Finally, the Committee notes with particular concern the fact that pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships.*  In light of these significant harms, it is essential that those who are caught and convicted for this conduct be punished severely.

H. R. Rep. No. 104-90, *reprinted in* 2 U.S.C.C.A.N. 104th Cong., 1st Sess., pp. 760-61 (1995) (emphasis supplied).

Brown gave his victims access to his computer.  Those victims were thereby made aware that other children were

under investigation and could go to prison. The district court properly applied the two-level increase for obstruction under U.S.S.G. § 3C1.1.

## III.

### Computer Use

Brown made extensive use of his computer in committing the offenses of which he was convicted. Among other things, he allowed his victims unmonitored access to the computer wherein they observed that other children were being filmed and sexually abused by adults.[2]

U.S.S.G. § 2G2.1(b)(3) provides: "If a computer was used to solicit participation by or with a minor in sexually explicit conduct for the purpose of producing sexually explicit material, increase by 2 levels." Defendant contends that the computer adjustment by its terms does not apply because Brown did not use it to solicit participation, in that he did not, via the computer, specifically ask minors to engage in sexually-explicit conduct. However, as the district court properly found, the Guideline is not so limited.

In the "Sex Crimes Against Children Prevention Act of 1995," Congress directed the United States Sentencing Commission to increase the Guidelines for sex crimes committed against children, specifically, for offenses committed under 18 U.S.C. §§ 2251 and 2252. In this legislation, Congress specifically directed the Sentencing Commission to increase the base offense levels for convictions under 18 U.S.C. § 2251(c)(1)(A) (unlawful to receive, exchange, buy, produce, display, distribute or reproduce any visual depiction of child pornography) and 18

---

[2]Brown also made other use of the computer. He used it to transmit child pornography to other locations. Images which he produced were found, for example, on computers in the United Kingdom. He also used it to invite other pedophiles to visit him and participate in "sleepovers" with victims.

## II.

### Obstruction

This Court reviews a district court's legal conclusions regarding the Sentencing Guidelines *de novo*, but accepts the district court's findings of fact unless they are clearly erroneous. *United States v. Jarman*, 144 F.3d 912, 914 (6th Cir. 1998); *United States v. Gort-DiDonato*, 109 F.3d 318, 320 (6th Cir. 1997). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Jarman*, 144 F.2d at 914 (quoting *United States v. DiDonato*, 109 F.3d at 320 (citations omitted)).

The relevant facts regarding the obstruction of justice adjustment applied by the district court are not in dispute. In 1996, the United States Customs Service ("USCS") began an international child pornography investigation. The USCS learned that persons in several countries were using computer software called Internet Relay Chat ("IRC") to trade in child pornography, and that a secret, private IRC chat channel entitled "Orchid Club" was also being used for this purpose. One participant was identified by the code name "Sheepy." "Sheepy" turned out to be one Ian Baldock of Hastings, England. Mr. Baldock's computer was seized by British authorities on October 17, 1997, pursuant to a search warrant. This computer contained about 42,000 images of child pornography and a set of rules for joining the IRC channel. Brown's nickname, "wavejump," was found in a list of users of the IRC channel. The name "wavejump" again turned up in two other computers in the United Kingdom belonging to individuals trafficking in child pornography. In early July 1998, British authorities advised USCS officials of "wavejump," and it was learned that "wavejump" had been connected to the IRC through Triton Technologies, Inc. ("Triton"), an Internet services provider in Grand Rapids, Michigan. It was later determined from computer records that on July 13 and 14, 1998, while in a chat room, "wavejump"

(Brown) learned of "Sheepy's" arrest and was advised that Sheepy had not encrypted his computer. Brown then replied, "God, I hope he don't have any of my privates on there." Brown was referring to his private video collection of child pornography.

On August 31, 1998, U.S. law enforcement officers first identified Brown as "wavejump," and on September 1, 1998, he was arrested and his residence was searched. Several days later, one of his victims, a child whom he had repeatedly molested, told police officers that before she had started school that year (sometime during mid to late August 1998) Brown had shown her a small silver gun in a box, and told her that if she ever told anyone about what he had done to her, he would put a bullet in her head when he got out of prison. This victim also said that Brown repeatedly threatened to stab her. The search of Brown's residence turned up just such a gun.

Section 3C1.1 of the Sentencing Guidelines provides:

**Obstruction or Impeding the Administration of Justice**
If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

There is no doubt that Brown's threats to a potential witness substantively amount to obstruction of justice. Application Note 4(a) to U.S.S.G. § 3C1.1 provides, as an example of conduct to which the obstruction adjustment applies, the following: "threatening, intimidating, or otherwise unlawfully influencing a codefendant, witness, or juror, directly or indirectly, or attempting to do so." By threatening one of his victims, a potential witness, Brown definitely engaged in obstructive conduct.

The issue here is, however, whether Brown *willfully* obstructed justice *during the course of the investigation . . . of the instant offense of conviction.* Brown argues that the obstruction adjustment does not apply because at the time he made the threat, the investigation had not yet focused on him, presumably because he had not yet been identified as "wavejump"; and he did not learn that he was the focus of the investigation until his residence was searched, and he was arrested, on September 1, 1998. He, therefore, concludes that his actions could not have been willful under the terms of the Guideline.

Brown draws the obstruction adjustment too narrowly. USCS agents had an ongoing investigation of "wavejump" underway beginning in early July 1998. They eventually used this information to identify Brown. Clearly, when Brown made his threats in August 1998, an investigation of the instant offense of conviction was in progress.

The obstruction adjustment does not, however, apply unless Brown acted "willfully." It has been said that the term "willful" has "no fixed meaning." *Smith v. Wade*, 461 U.S. 30, 63 n.3 (1983) (Rehnquist, J., dissenting). However, the term generally connotes some kind of deliberate or intentional conduct. Logically, Brown's actions cannot have been willful unless he had some idea that he was being investigated. Otherwise, the adjustment would serve no deterrent purpose. We, therefore, join the Fifth and Eighth Circuits in holding that the obstruction adjustment applies where a defendant engages in obstructive conduct with knowledge that he or she is the subject of an investigation or with the "correct belief" that an investigation of the defendant is "probably underway." *United States v. Lister*, 53 F.3d 66, 71 (5th Cir. 1995); *United States v. Oppedahl*, 998 F.2d 584, 586 (8th Cir. 1993).

In this case, Brown's chat room comment, "God, I hope he don't have any of my privates on there," made it clear that he knew in July 1998 that he probably was under investigation. Moreover, the nature of the threats he made to his young victim in August 1998 confirm his knowledge that he was