**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0247n.06
Filed: April 10, 2006

No. 04-6215

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| ROBERT WISDOM, | ) | OPINION |
| | ) | |
| Defendant-Appellant. | ) | |
| ———————————————— | ) | |

**Before: MOORE and McKEAGUE, Circuit Judges; and POLSTER, District Judge.**[*]

**POLSTER, District Judge.** Defendant-Appellant Robert Wisdom ("Wisdom") appeals

from a sentence imposed after his conviction, pursuant to a guilty plea, for distribution and

possession with intent to distribute crack cocaine. Wisdom raises three issues on appeal. First, he

argues that the district court enhanced his sentence for obstruction of justice and assigned him a base

offense level of 32 based on facts neither admitted by him nor found by a jury beyond a reasonable

doubt. Second, he argues that the district court erred when it imposed a sentence under a mandatory

Guidelines regime. Third, he argues that the district court erred in relying on hearsay evidence at

the sentencing hearing to enhance his sentence. For the reasons stated below, we conclude that the

district court did not err in relying on hearsay, nor did the district court err in any of its Guidelines

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District
of Ohio, sitting by designation.

calculations. Because the district court increased Wisdom's sentence based upon judge-found facts under the then-mandatory Guidelines, we must **VACATE** Wisdom's sentence and **REMAND** for re-sentencing consistent with the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

## I. BACKGROUND

In June 2004, Wisdom entered a plea of guilty, without a written plea agreement, to two counts of knowingly and intentionally distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1), based on sales that occurred on or about April 12, 2004, and April 14, 2004, and one count of knowingly and intentionally possessing crack cocaine on or about April 15, 2004, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The government filed a notice of prior convictions which increased the potential sentence to a mandatory minimum of ten years to a maximum of life imprisonment. After a contested sentencing hearing, the district court sentenced Wisdom to 188 months of imprisonment, the low end of the Guidelines range for offense level 32, Criminal History Category V, followed by eight years of supervised release.

Two law enforcement agents testified for the government at sentencing. Agent Hardcorn testified that he performed surveillance of two drug transactions that occurred between Wisdom and a confidential informant ("CI") on April 12 and April 14, 2004. After the April 14 transaction, Agent Hardcorn received a telephone call from the CI. Defense counsel objected to Hardcorn's testimony regarding the telephone conversation in light of the U.S. Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36, 68 (2004). Counsel argued that the introduction of the out-of-court testimonial statements would violate Wisdom's rights under the Confrontation Clause of

2

the Sixth Amendment because Wisdom had no opportunity to cross-examine the CI. The district court overruled the objection, finding that hearsay is generally admissible at sentencing proceedings.

Hardcorn then testified that he spoke to the CI again that evening, at which time the CI explained that Wisdom had confronted him about working for the police and told him he had a video recording to prove it. Wisdom then took the CI to a residence where a large group of people were watching a videotape. When the CI entered the residence, someone locked the door behind him. At some point, a woman knocked on the door. After the woman was permitted entrance, she saw Wisdom holding a knife and asked what he was going to do with it. He replied: "There's about to be a homicide up in here. This guy's about to be six feet under." J.A. at 39 (Tr. of Sentencing Hr'g at 15). The CI was eventually permitted to leave.

Agent Honaker also testified for the government. Honaker stated that after Wisdom's arrest, he interviewed Wisdom about the April 14 incident. Wisdom told Agent Honaker that the CI was working for the police, and that there was a videotape evidencing this conduct. After Wisdom viewed the videotape himself, he walked to the residence where the CI was staying and confronted the CI about working with the police. The CI denied the accusation and Wisdom left and returned to watch the video again. Wisdom then returned to the CI's residence, grabbed his throat with his hand and told him he was working for the police and that he had to watch the videotape. According to Agent Honaker, Wisdom stated that he had a steak knife with him when he confronted the CI the second time.

Wisdom also testified at the sentencing hearing. Wisdom stated that he had a *butter* knife which he was using to adjust hair clippers because he was cutting his hair at the time, and stated that he explained this to the agents during the interview. Agent Honaker testified that Wisdom never

3

made such a statement during the interview. Wisdom testified that he never grabbed or hit the CI, he "never once threatened his life," the CI "came on his own free will," and he never told anybody he had a steak knife. J.A. at 54-55, 61-63 (Tr. of Sentencing Hr'g at 30-31, 37-39). Wisdom stated that he just wanted the CI to know that he knew the CI was working for the police and that he "messed my life up." J.A. at 60 (Tr. of Sentencing Hr'g at 36). Wisdom denied telling Honaker that he grabbed the CI by his throat.

According to Agent Honaker, Wisdom admitted during the interview that he normally sold six ounces of crack cocaine in a week and that he had done so for an extended period of time. Wisdom testified at sentencing that he did not sell six ounces of crack cocaine per week, or for any extended period of time. He admitted, however, that he told Agent Honaker that he dealt six ounces of crack cocaine because he thought "if I made myself look bigger, it would help me." J.A. at 53 (Tr. of Sentencing Hr'g at 29). Wisdom indicated that he was merely puffing to look good to the police, who had promised to help him if he cooperated. At the sentencing hearing, Wisdom testified that he sold about ten or twelve grams of crack cocaine about once a month or once every couple of months starting in the end of 2003, "around the holidays, around Christmas." J.A. at 57 (Tr. of Sentencing Hr'g at 33).

After hearing all the testimony, the district court determined that Wisdom was responsible for fifty-five grams of crack cocaine, and accordingly should start at a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4). The district court determined that Wisdom perjured himself during the sentencing hearing, lied to a law enforcement agent during the investigation of the offense of conviction, and attempted to intimidate the confidential informant, and accordingly gave Wisdom a two-point enhancement for obstruction of justice pursuant to U.S. Sentencing Guidelines

4

("U.S.S.G.") § 3C1.1. The district court also gave Wisdom a two-level downward adjustment for acceptance of responsibility for timely admitting his guilt, *see* U.S.S.G. § 3E1.1(a), recognizing this was an extraordinary case where both an obstruction of justice enhancement and an acceptance of responsibility reduction applied. *See* U.S.S.G. § 3E1.1 cmt. n. 4. The court sentenced Wisdom to 188 months of imprisonment, the low end of the Guidelines range for offense level 32, Criminal History Category V[1] (188 to 235 months).

## II. ANALYSIS

Wisdom argues that his sentence was enhanced based on judge-found facts under a mandatory Guidelines scheme in violation of the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). The government concedes that Wisdom is entitled to re-sentencing.

At oral argument, defense counsel asserted that the district court on remand may not enhance Wisdom's sentence based on facts not admitted by Wisdom. This argument is without merit. *Booker* did not eliminate judicial fact-finding. *See United States v. Stone,* 432 F.3d 651, 654-55 (6th Cir. 2005). On remand, the district court must consider the advisory provisions of the Guidelines and the factors identified in 18 U.S.C. § 3553(a). *United States v. Jackson,* 408 F.3d 301, 305 (6th Cir. 2005). The district court should also provide an adequate explanation of its reasons for imposing a sentence in order for us to effectively review the reasonableness of that sentence on appeal. *United States v. Williams,* 432 F.3d 621, 622 (6th Cir. 2005).

While re-sentencing is required under *Booker*, we will review at this time Wisdom's contention that the district court erred in calculating his base offense level and in imposing a two-point enhancement for obstruction of justice. *See United States v. McDaniel,* 398 F.3d 540, 551 (6th

---

[1]The parties do not dispute Wisdom's criminal history category.

Cir. 2005) (providing guidance as to the proper interpretation of the advisory Guidelines provisions whose application was challenged on appeal); *United States v. Yagar,* 404 F.3d 967, 970 (6th Cir. 2005); *see also United States v. Norfleet,* 143 F.App'x 645, 654 (6th Cir. 2005) (unreported decision). Based on the record before us, we conclude that the district court did not err in applying a two-level enhancement for obstruction of justice, or in holding Wisdom responsible for fifty-five grams of crack cocaine.[2]

Wisdom contends that the district court erred in calculating his base offense level, and claims that he should be held responsible only for the 12.466 grams of crack cocaine he admitted to distributing and/or possessing with the intent to distribute as part of his guilty plea. The Guidelines state that a defendant's base offense level is to be determined:

> [O]n the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1) (Relevant Conduct). The Guidelines permit "[t]ypes and quantities of drugs not specified in the count of conviction [to] be considered in determining the offense level." U.S.S.G. § 2D1.1 cmt. n. 12 (citing *id.* § 1B1.3(a)(2)); *United States v. Davern,* 970 F.2d 1490, 1494 (6th Cir. 1992) (stating that the amount of drugs used to calculate a defendant's base offense level is not limited to the amounts involved in the offense of conviction or charged in the indictment). "In addition, 'with respect to offenses of a character for which § 3D1.2(d) would require grouping

---

[2]As we stated in *McDaniel,* "our discussion of these Guidelines provisions should not be construed as requiring the district court to impose a sentence reflecting these enhancements or as speaking to the ultimate reasonableness of the sentence[ ] the district court orders on remand." *Id.* at 551 n.9.

of multiple counts,' relevant conduct includes 'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Gill,* 348 F.3d 147, 152 (6th Cir. 2003) (citing U.S.S.G. § 1B1.3(a)(2)). Offenses covered by U.S.S.G. § 2D1.1 (including distribution and possession with the intent to distribute a controlled substance) are to be grouped under this rule. *See* U.S.S.G. § 3D1.2; *see also id.* App. A; *Gill,* 348 F.3d at 151.

Two or more offenses may qualify as part of the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 cmt. n. 9(B). To determine whether offenses are sufficiently related to be considered as part of the same course of conduct, courts should consider the degree of similarity of the offenses, the regularity (repetition) of the offenses, and the time interval between the offenses. *Id.* § 1B1.3 cmt. n. 9(B); *see also United States v. Hill,* 79 F.3d 1477, 1481-82 (6th Cir. 1996). At sentencing, Wisdom (who was twenty-six years old at the time of sentencing) testified that he began dealing crack cocaine around the age of twelve. He testified to selling approximately ten or twelve grams of crack cocaine per month, or once every couple of months, beginning near the end of 2003. He testified that he would need to sell this amount in a month in order to support himself and his "baby's mother." In addition, Wisdom stated that he was dealing "[o]ff and on" starting around the end of 2003 until his arrest in mid-April of 2004.

Based on this testimony, the district court determined that Wisdom was responsible for fifty-five grams of crack cocaine. The court arrived at this amount by using a conservative four-month period of distribution (December 2003 to March 2004) and multiplying the months of drug activity by eleven grams (using the average of ten and twelve). To this amount the court added another

7

eleven grams, the amount Wisdom admitted to in his guilty plea.[3] The district court determined that the uncharged activity could be considered relevant conduct because it was part of the same course of conduct as the offense of conviction after taking into account the regularity of the offenses, the time interval between the offenses, and the degree of similarity of the offenses.

Wisdom's testimony revealed a relatively regular pattern of narcotics trafficking for almost four months preceding the offense of conviction. In addition to the regularity of this prior drug activity and the short time span between the uncharged conduct and the offense of conviction, this uncharged activity involved the same drug (crack cocaine) and the same objective (distributing gram quantities of crack cocaine) as the offense of conviction. *See United States v. Nichols,* 979 F.2d 402, 414 (6th Cir. 1992), *aff'd on other grounds,* 511 U.S. 738 (1994). We have held that when "'the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence'; but the evidence supporting the estimate 'must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate.'" *United States v. Keszthelyi,* 308 F.3d 557, 576 (6th Cir. 2002) (citing *United States v. Owusu,* 199 F.3d 329, 338 (6th Cir. 2000)); *see also* U.S.S.G. § 2D1.1 cmt. n. 12. The government must prove the quantity of drugs involved by a preponderance of the evidence. *Gill,* 348 F.3d at 153. Here, the district court's finding that Wisdom distributed an additional forty-four grams of crack cocaine was more than borne out by the evidence. Wisdom himself testified to the facts underlying the court's drug quantity determination. In addition, the court's estimate was very

[3]Given that Wisdom admitted to distributing and possessing with the intent to distribute a total of 12.466 grams of crack cocaine at his change of plea hearing, the district court actually underestimated this amount. *See* J.A. at 117-18 (Tr. of Change of Plea Hr'g at 29-30); *see also* Appellant's Br. at 4.

conservative considering that, as part of his guilty plea, Wisdom admitted to distributing and/or possessing with the intent to distribute a total of 12.466 grams of crack cocaine within a period of four days. Accordingly, we find that the district court's conclusion that the earlier incidents of cocaine distribution were part of the same course of conduct as the transaction for which Wisdom was convicted was not improper, and its estimate of the quantity of cocaine for which Wisdom was responsible was sufficiently supported by the record.

Wisdom also objects to the district court's two-level enhancement for obstruction of justice. U.S.S.G. § 3C1.1 authorizes a two-level upward adjustment if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction" and "the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." This Guideline provision applies "where a defendant engages in obstructive conduct with knowledge that he or she is the subject of an investigation or with the correct belief that an investigation of the defendant is probably underway." *United States v. Boyd,* 312 F.3d 213, 217 (6th Cir. 2002) (citing *United States v. Brown,* 237 F.3d 625, 628 (6th Cir. 2001)). An investigation into the offense conduct falls within the scope of the Guideline provision where such investigation "involve[s] some type of law enforcement or other action by government employees acting within the course and in furtherance of their official duties." *Id.* (citing *United States v. Kirkland,* 985 F.2d 535, 538 (11th Cir.1993)).

Application Note 4 to U.S.S.G. § 3C1.1 provides a non-exhaustive list of behavior to which the obstruction adjustment applies, including: attempting to intimidate a witness, *id*. § 3C1.1 cmt. n. 4(a); committing perjury, *id*. § 3C1.1 cmt. n. 4(b); and providing materially false information to

9

a judge, *id*. § 3C1.1 cmt. n. 4(f). In this case, the district court found by a preponderance of the evidence that the obstruction of justice enhancement was warranted based on three independent grounds. The district court found that Wisdom lied to Agent Honaker when he told the agent that he dealt six ounces of crack cocaine per week. The court found this statement to be material because it had the potential of obstructing the investigation of the offense. Wisdom made this statement to the agent during his post-arrest interview. This obstructive conduct was, therefore, committed by Wisdom "during the course of the investigation . . . of the instant offense of conviction," "with knowledge that he . . . [was] the subject of an investigation" and "related to . . . the defendant's offense of conviction and any relevant conduct." As Wisdom admitted to making this false statement to the agent, there is no *Booker* violation, and this finding alone supports the district court's two-level adjustment under § 3C1.1.

In addition, the district court found that Wisdom committed perjury on a material fact at the sentencing hearing when he denied making a statement to Agent Honaker that he had grabbed the CI by the throat. This obstructive conduct occurred "during the . . . sentencing of the instant offense of conviction" and "related to . . . [Wisdom's] offense of conviction." Finally, the district court determined that Wisdom did in fact grab the CI by his throat and attempt to intimidate him when he discovered the CI was working with the police. This act of obstruction occurred after law enforcement performed surveillance of the April 12 and April 14 transactions in which the CI was involved. Therefore, the obstructive conduct occurred "during the course of the investigation . . . of the instant offense" and "related to . . . the defendant's offense of conviction." *See United States v. Baggett,* 342 F.3d 536, 542 (6th Cir. 2003) (stating that U.S.S.G. § 3C1.1 requires a nexus between the acts of obstruction and the crime of conviction). Wisdom testified at sentencing that

10

he confronted the CI to let him know that he "messed [his] life up." From this testimony, it is apparent that Wisdom attempted to intimidate the CI "with the correct belief that an investigation of the defendant [was] probably underway." Accordingly, based on the record, the district court did not err in applying the obstruction of justice enhancement.

In addition to his *Booker* claims, Wisdom argues that his sentence was enhanced in violation of the Confrontation Clause of the Sixth Amendment because the district court relied on the out-of-court statements of the CI to enhance his sentence. In support of this claim, Wisdom cites to *Crawford v. Washington,* 541 U.S. 36 (2004). In *Crawford,* the U.S. Supreme Court held that the Confrontation Clause prohibits the introduction of testimonial statements by witnesses not called to testify at trial. *Id.* at 38, 68. After the parties submitted their briefs, this Court decided the case of *United States v. Stone,* 432 F.3d 651 (6th Cir. 2005). In *Stone*, we held that "*Crawford* does not change our long-settled rule that the confrontation clause does not apply in sentencing proceedings." *Id.* at 654.

While hearsay may be considered in determining a sentence, the accused must be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of the defendant's due process rights. *United States v. Silverman,* 976 F.2d 1502, 1512 (6th Cir. 1992). The defendant must establish that the challenged evidence is materially false or unreliable, and that such information actually served as the basis for the district court's sentence. *Id.* Here, there is no doubt that Wisdom had an opportunity to refute the testimony of the law enforcement agents who testified at his sentencing hearing. The district court judge found the evidence sufficiently reliable to support a preponderance of the evidence finding, *see id.*, and found that some

11

of the evidence was corroborated in part by Wisdom's testimony. Wisdom has not established that the out-of-court statements introduced by either agent are materially false or unreliable.

Wisdom also argues that the district court's reliance on hearsay to enhance his sentence violates *Booker*. This argument is without merit. In *United States v. Luciano,* 414 F.3d 174, 179 (1st Cir. 2005), the First Circuit held that nothing in *Booker* necessitated a change in the majority view that there is no right to confront witnesses at a sentencing hearing. *Id.* at 179 ("*Booker* error 'is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.'") (citing *United States v. Antonakopoulos,* 399 F.3d 68, 75 (1st Cir. 2005)). In finding it significant that judges imposing sentence post-*Booker* are accorded greater discretion than they were under the pre-*Booker* regime, the Second Circuit determined that "there is no logical basis for concluding that [the consideration of hearsay testimony during a sentencing proceeding] is prohibited under the system of advisory Guidelines established by *Booker* [where such consideration was not prohibited under a mandatory Guidelines regime]." *United States v. Martinez,* 413 F.3d 239, 243-44 (2d Cir. 2005); *see also United States v. Brown,* 430 F.3d 942, 943-44 (8th Cir. 2005). In *United States v. Katzopoulos,* 437 F.3d 569, 576 (6th Cir. 2006), this Court recently joined the First and Second Circuits in holding that *Booker* does not change our well-settled rule that there is no right to confront witnesses in a sentencing proceeding.

## III. CONCLUSION

Based on the foregoing, we conclude that the district court did not err in relying on hearsay, nor did the district court err in any of its Guidelines calculations. Because the district court viewed

12

the Guidelines as mandatory and increased Wisdom's sentence based upon judge-found facts, we must **VACATE** Wisdom's sentence and **REMAND** for re-sentencing consistent with the U.S. Supreme Court's decision in *Booker.*