NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0916n.06

No. 13-2682

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 09, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MARIO DIONE AUSTIN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:     SILER, SUTTON, and STRANCH, Circuit Judges

JANE B. STRANCH, Circuit Judge.   Mario Austin appeals the sentence entered following his guilty plea to criminal charges involving the distribution of cocaine and the related possession of a firearm.  Mr. Austin's sole contention on appeal is that the district court erred in its factual determination of the quantity of cocaine attributable to him and, as a result, miscalculated his base offense level.  We review the district court's decision for clear error and, finding none, AFFIRM the district court's sentencing of Mr. Austin.

## I. FACTUAL BACKGROUND

In January 2011, a Michigan State Police narcotics team obtained a warrant to search a home in Battle Creek, Michigan.  When the warrant was executed, a man present at that residence, Edward Cleveland, implicated Austin in a cocaine selling conspiracy.  Cleveland told police officers that he worked for Austin, that Austin sold between five and seven ounces (142 to 198 grams) of cocaine per week, and that he had been at Austin's residence and seen him there

with four ounces (113 grams) of cocaine within the past thirty-six hours. The police used this information to obtain a search warrant for Austin's residence, and a search pursuant to the warrant turned up 74.89 grams of cocaine and a loaded pistol. Austin waived his *Miranda* rights and admitted to selling cocaine. At the time he said that he had been dealing 0.5 ounces (14 grams) per week since losing his disability benefits in mid-2010. He stated that he had sold cocaine since he was 17 years old, that he sold "enough to get by," and that though his girlfriend paid the bills, he helped support the kids with the proceeds from his cocaine sales. Austin was not charged at that time.

In February 2012, a police officer pulled Austin over in a traffic stop, saw marijuana in plain view in his car, and found two bags of cocaine in his underwear during the ensuing search of his person. After initially attempting to convince the police that the substance was chalk, Austin admitted it was cocaine and that he intended to sell it. He was not arrested at that time, but was later indicted for cocaine conspiracy (with Cleveland), possession with intent to distribute cocaine, being a felon in possession of a firearm, and possession of a firearm in furtherance of drug trafficking. Austin entered into a plea agreement with the government and pled guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i). A Presentence Investigation Report was prepared in anticipation of sentencing.

In early 2012, Charles Brim, Jr. was indicted and charged with cocaine conspiracy and a firearm offense in the Western District of Michigan. Brim agreed to cooperate with the government and in a proffer stated that he had purchased 4.5-ounce (128-gram) quantities of cocaine from Austin approximately every two months over the past several years, and that he had

bought 9 ounces (255 grams) of cocaine from Austin twice. Pursuant to his cooperation agreement, Brim later testified against Austin before a grand jury in the Western District of Michigan. He stated under oath that he had purchased cocaine from Austin roughly every two months, most recently in the range of 63 to 125 grams, with 63-gram purchases being the most common, though in the past he had purchased 4.5-ounce (128-gram) and 9-ounce (255-gram) quantities.

During his proffer, Brim also provided a phone number that he said he used to contact Austin. He testified to the grand jury that he had Austin's number saved in his phone as "M," and that he called Austin on that number to set up cocaine purchases. Investigators used an internal database from a prior investigation to obtain records of calls between Brim's phone and the number he said belonged to Austin, and found that it appeared to be registered under the name "Martina Austin." Though Brim stated that his relationship with Austin ended in October 2011, the log indicates that calls between Brim and "M" continued for several months after that date. The calls were frequently concentrated around isolated dates, and were often under a minute in duration.

Austin's presentence report attributed a total of 1.62 kilograms of cocaine to him. This figure included the 19.38 grams of cocaine found with Cleveland, 74.89 grams of powder cocaine found at Austin's house during the execution of the warrant, and 1.53 kilograms of cocaine attributed to Austin based on Brim's proffer (4.5 ounces (127.5 grams) x 6 times per year x 2 years). Austin objected to the inclusion of the 1.53 kilograms attributed to his sales to Brim, and the parties submitted sentencing memoranda addressing the issue prior to Austin's December 2013 sentencing hearing.

Austin's memorandum argued that Brim's proffer statement, grand jury testimony, and telephone toll records purporting to show calls between Austin and Brim could not meet the government's preponderance burden at sentencing. Specifically, Austin argued that Brim's statements were unreliable because Brim had a motive to lie, there were discrepancies between the phone records and Brim's testimony, and the phone number Brim said belonged to Austin was actually registered in the name of "Martina Austin." Austin asserted that Brim had a motive to lie because at the time he offered testimony against Austin, Brim had pled guilty to cocaine conspiracy and distribution charges with a mandatory minimum of 10 years. With regard to the phone records, Austin noted that though Brim had said his last encounter with Austin was in October 2011 and explained that interaction in some detail, only nine calls on the log took place in October. The log showed 90 additional calls spanning from November 2011 through February 2012. Austin argued that Brim's statements were never subjected to cross examination, and that without the suspect toll records—linked to Austin solely through Brim's statements—no evidence corroborated Brim's proffer and grand jury testimony.

The government argued that Brim's statements satisfied the government's preponderance burden because his proffer and grand jury testimony were generally consistent, and were in fact corroborated by the phone record showing 99 calls between Brim and the number he gave to investigators and identified as belonging to Austin. The government also added that Cleveland said Austin had been selling five to seven ounces (142 to 198 grams) of cocaine per week and that though Cleveland had not specified how long he had been doing so, this was consistent with Brim's statements about Austin's activities.

At sentencing, the district court heard argument on the objection. The government did not call Brim to testify, but the court noted that the government had provided it with the

transcript of Brim's grand jury testimony. The court found that the pattern of calls shown on the phone records matched the pattern of drug selling that Brim had described in his grand jury testimony, and that the pattern of calls was "supportive of Brim's theory that he had contact with Austin . . . for purposes of drug dealing."

The court acknowledged the discrepancy between Brim's statement that he and Austin last had contact in October 2011 and the call logs showing calls through February 2012 between Brim and the number he identified as belonging to Austin. But weighing the totality of the evidence, the court rejected Austin's argument—that Brim's error on the dates indicates he must be lying about the drug dealing—and found it was far more likely that Brim was simply mistaken about the date of his last contact with Austin. Accordingly, the court found that the government had proven the quantity of cocaine by a preponderance of the evidence and overruled Austin's drug quantity objection, noting however that the result would have been different had "beyond a reasonable doubt" been the standard in effect.

The court calculated Austin's sentencing guideline range at 84 to 105 months for his possession with intent to distribute cocaine charge, and sentenced him to 84 months imprisonment and 5 years supervised release on that count, then imposed the mandatory 60-month consecutive sentence on the firearm charge, for a total of 144 months in custody. The parties agree that had Austin's objection been successful, he would have had a base offense level of 24 for the drug count, and that his advisory guideline range would have dropped from 84 to 105 months to 70 to 87 months. Had Austin been sentenced at the low end of this new lower range, his sentence would have been reduced by 14 months.

Austin preserved his objection to the presentence report and a notice of appeal was timely filed on December 3, 2013.

## II. ANALYSIS

This court reviews a district court's finding of drug quantity for clear error. *United States v. Swanberg*, 370 F.3d 622, 624-25 (6th Cir. 2004). Clear error exists when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007). Clear error is not present "where two permissible views of the evidence exist." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008).

A sentencing court must determine the quantity of drugs attributable to the defendant to establish a base offense level pursuant to Sentencing Guidelines Section 2D1.1(c). When the court is not presented with drugs seized from the defendant, it must estimate the amount attributable to the defendant. USSG §2D1.1, comment.(n.5) (2012); *United States v. Carter*, 502 F. App'x 440, 442 (6th Cir. 2012) (citing *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir. 1994)). The government must prove drug quantity by a preponderance of the evidence. *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008). A court's quantity estimate must be supported by competent evidence that has a "minimal level of reliability beyond mere allegation." *United States v. Wisdom*, 175 F. App'x 702, 706 (6th Cir. 2006) (quoting *United States v. Keszthelyi*, 308 F.3d 557, 576 (6th Cir. 2002)). The estimate "will suffice so long as it errs on the side of caution and likely underestimates the quantity of drugs actually attributable to the defendant." *Anderson*, 526 F.3d at 326.

We have held that a district court may consider hearsay in sentencing, but the court must "find[ ] it to have sufficient or minimally adequate indicia of reliability." *United States v. Silverman*, 976 F.2d 1502, 1513 (6th Cir. 1992) (en banc); *see also United States v. Gibbs*, 182 F.3d 408, 441 (6th Cir. 1999). In this case, there was sufficient corroboration to permit the

court to rely on Brim's testimony about Austin's cocaine sales. *See United States v. Hunt,* 487 F.3d 347, 353 (6th Cir. 2007) (explaining that corroborating evidence can provide sufficient indicia of reliability).

Austin raised legitimate concerns about Brim's motivation to lie when giving testimony aimed at reducing his own sentence, and rightly suggested that Brim's absence from the sentencing hearing provides some basis to question Brim's credibility. We would be more concerned by the fact that Brim's two statements, including the assertion that the "M" in his phone is Mario Austin, amount only to "self-corroboration," were it not for Cleveland's uncontested 2011 statement in the presentence report indicating that Austin sold five to seven ounces of cocaine per week and recently had four ounces of cocaine in Austin's home. Though Cleveland's statements do not mention sales to Brim in particular and do not specify the exact time period during which Austin was selling, they do provide some independent basis for concluding that Austin was selling the volume of cocaine Brim alleged. Furthermore, Austin's early 2012 car stop, which revealed him to be in possession of cocaine that he admittedly intended to sell, provides some independent support for Brim's statement that Austin delivered and sold cocaine to him throughout 2010 and into late 2011. Based on Cleveland's corroboration, Austin's 2012 car stop, and the fact that Brim's grand jury testimony was under oath, we conclude that Brim's hearsay statements contain the "minimally adequate indicia of reliability" necessary for the court to credit them.

The conflict between Brim's statement that he last bought drugs from Austin in October 2011 and the phone records showing that a large number of calls between Brim and "M" took place from December 2011 through February 2012 provides some basis for doubting Brim's allegations. The court acknowledged the discrepancy and gave both parties the opportunity to

argue the issue during the sentencing hearing. After the court heard both sides, it was left with what we find to be a choice between two plausible conclusions—that Brim lied in his testimony about the quantity of drugs he purchased from Austin, or that Brim had indeed purchased roughly the amounts that he indicated, and was off by a few months in his recollection of when the sales ended. Because either conclusion could reasonably be reached based on the evidence, we find that the court committed no error by adopting the latter. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

It was also within the district court's discretion to determine that the phone number attributed to "M" in Brim's mobile phone was Austin's phone number. Though a law enforcement database indicated that the phone belonged to someone named Martina Austin rather than Mario Austin, Brim's sworn testimony placed competent evidence in the record that the phone number was in fact used by Mario Austin. The defense's argument that it was just as likely that the "M" in Brim's phone was someone named Martina Austin does not provide grounds to overturn the decision on appeal under the clear error standard. Again, the court was faced with two plausible options and chose one of them.

Though Brim's testimony provided sufficient indicia of reliability to be credited at sentencing, we have some doubts that the drug quantity estimate properly "err[ed] on the side of caution." *See Anderson*, 526 F.3d at 326. Brim's proffer states that for the past several years he has purchased cocaine from Austin "approximately every two months in primarily four and a half ounce [128-gram] quantities and in nine ounce [255-gram] quantities twice." The government argued that Brim's presentence report erred on the side of caution by ignoring the alleged nine-ounce sales and only attributing to Austin the sale of the four-and-a-half ounce

quantity every two months over a two year period. But in fact, during his grand jury testimony, Brim stated that though he had at times bought between four and a half and nine ounces of cocaine from Austin, "as years got by towards the indictment I kind of slowed down." He estimated that more recently his buys "fluctuated from like 63 grams to 125 grams [2.22 ounces to 4.41 ounces]," and that "generally it would be the 63 grams. Sometimes I would get the 125."

Here, however, even exclusive use of Brim's lowest estimate—63 grams—would result in no change in the guideline estimate when multiplied out over two years. Under the November 1, 2012 Guidelines Manual in effect at the time of Austin's sentencing, his base charge level of 26 was assigned to the sale of cocaine ranging from 500 grams to 2 kilograms. USSG §2D1.1(c)(7). Multiplying 63 grams by six buys per year (every two months) by two years, then adding the 19.38 grams attributable to Cleveland and the 74.89 grams in Austin's house yields 850 grams, a quantity within the same range as the 1.62 kilograms attributed to Austin in his presentencing report and ultimately by the district court. Even assuming the district court clearly erred, there is no basis for reversing Austin's sentence given the quantities in this case because the alternate calculation would lead to no change in the guidelines range.

### III. CONCLUSION

Because the district court acted within its discretion in crediting Mr. Brim's testimony regarding drug buys from Mr. Austin, and because the possible error in the estimation of the drug quantity at issue could not result in reversible error given the particular facts of this case, we AFFIRM the district court's sentencing of Mr. Austin.