**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 15a0011n.06**

**No. 13-6316**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jan 07, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| VICTORIA WALLACE, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     BOGGS and GRIFFIN, Circuit Judges; and HOOD, District Judge.[*]

BOGGS, Circuit Judge.  Defendant-Appellant Victoria Wallace appeals her sentence of 216 months in prison for conspiracy to commit sex trafficking of minors, in violation of 18 U.S.C. § 1594(c).  Wallace challenges the district court's application of two separate sentencing enhancements under the United States Sentencing Guidelines for undue influence of a minor and for obstruction of justice.  Because there is ample evidence in the record supporting the conclusions that Wallace: (1) unduly influenced a minor to engage in prohibited sexual conduct; and (2) obstructed the administration of justice by sending threatening text messages to a witness during the government's investigation, we affirm the district court's sentence.

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

I

In 2012, Defendant-Appellant Victoria Wallace transported girls within Tennessee and from Tennessee to Louisiana for the purpose of engaging in prostitution. Wallace was aware that some of the girls were underage. Following an investigation by the FBI, the government initially charged Wallace by indictment with three counts of child sex trafficking, in violation of 18 U.S.C. § 1591(a)(1), and one count of obstructing the enforcement of federal sex-trafficking laws, in violation of 18 U.S.C. § 1591(d). After entering into a plea agreement with the government, Wallace pleaded guilty to one count of conspiracy to commit sex trafficking of minors, in violation of 18 U.S.C. § 1594(c).

At the sentencing hearing held by the district court in August 2013, one of the minor girls involved in Wallace's operation (the "witness") testified that she met Wallace in 2012 when Wallace was initiating a new member into her street gang in Memphis. The witness testified that Wallace, who introduced herself as "Prune the mother-fucking Goon," was the "head of all the girls" in her gang. After Wallace learned that the witness and some of her friends "used to get money from" their "little friend guys"—ostensibly by engaging in sex acts—Wallace told the girls they could "get some real money" if they worked with her. Soon after, Wallace took the witness and other girls, some of whom were also minors, around the city to "have sex for money." On several occasions thereafter, Wallace organized the girls to engage in prostitution, and she received the money that the girls obtained for their efforts.

The witness testified that she initially gave the money that she earned from engaging in sex acts to Wallace because Wallace promised to purchase school clothes and supplies for her, but Wallace in fact spent the money on herself. The witness explained that she also moved in with Wallace because Wallace lived near the school that the witness wanted to attend and the

2

"only way [she] could go there was . . . to stay with" Wallace.  Although she initially thought that Wallace "was real cool," Wallace "started taking advantage of [her]" and "the fact that [she] was staying with" Wallace.  On one occasion, Wallace told the witness that she wanted her to "[h]ave sex with [Wallace's] brother," who would pay Wallace in exchange.  On another, Wallace instructed the witness to prostitute even though she expressed reluctance because she was having her period.

In the summer of 2012, Wallace transported the girls to New Orleans to engage in prostitution there.  Soon after their arrival, the girls were picked up by the police and were told they "couldn't walk the streets after 8:00."  After they were released from custody, some of the girls expressed fear of being locked up and of walking alone after dark in a "scary" neighborhood, but Wallace "got mad" and drove around to make sure the girls continued to walk the streets alone.  When asked why she continued to walk the streets by herself, the witness testified that "Prune had a very bad attitude, and she had a boy that was [in] the . . . gang, [and] we didn't know what they were capable of doing . . . to us."

The witness testified that she saw Wallace "beat up" one of the girls working for her on "numerous" occasions for missing work, including punching her in the face and dragging her into a van by her hair.  In addition, Wallace threatened to beat up the witness herself "a couple of times."  Wallace made some of these threats because the witness "stopped liking" her work and "didn't want to walk" the streets. Wallace convinced the witness to keep working by threatening her, sometimes in public, or by bribing her and "telling [her] things [she] wanted to hear" by making promises about the money they would earn together to "persuade [her] to get out there."

Later in 2012, some of the girls, including the witness, were stopped by the Memphis police in a stolen vehicle.  The girls were brought in for questioning, and the FBI began

3

investigating the sex-trafficking operation soon after. While the investigation was ongoing, Wallace became "angry because she found out her name was floating through the FBI." The witness explained that Wallace sent her threatening text messages because Wallace claimed not to want the girls "telling lies" to the government about her. For example, Wallace sent messages to the witness stating:

- "I can make it happen to hoe just say some smart bye little dirty hoe";
- "your name already ringing and I'm going to make sure it do at your school";
- "hoe you just weak as hell and can't fight I'll get my little home girl to beat you at school let me call her now";
- "Hoe keep my name out of your mouth . . . [or] I'm going to come beat you hoe . . . ."

The witness explained that Wallace was telling her to "watch out" and threatening to have her "jumped" at school.

Wallace also testified at the sentencing hearing. Although Wallace stated that she was in a gang "[f]or about a year," she claimed that she was "deflunk[ed]" out of the gang prior to meeting the witness. While she admitted driving the girls around for the purpose of engaging in sex acts, she denied "mak[ing] anybody" engage in prostitution "when they didn't want to" or using physical force or threats against anyone. Regarding the text messages, Wallace claimed that she only "talk[ed] bad" when she "found out that [the girls were] lying on [her]" and "trying to get [her] caught up in some stuff" by mentioning her name to the authorities. Wallace testified that she "started snapping out" when she found out that the police might come question her, and that is when she decided to text the witness only to "as[k] her questions [about] why she lie[d]" and to convince the witness to "stop lying on [her]." She was upset that the girls were "trying to make it seem like that [she] was a pimp and like [she] was making them do what they [were] doing," even though they were "already doing it" before they met Wallace. On cross-examination, Wallace admitted that she threatened to have the witness's "ass kicked" and to let

4

everybody at her school know that she was a prostitute. Wallace also admitted that she "just went off" in the messages, but claimed that she really "didn't mean what [she] said."

During the proceedings below, the district judge granted defense counsel's request that Wallace undergo a mental-competency evaluation pursuant to 18 U.S.C. § 4241. Wallace has a history of severe learning disabilities, as well as depression, mood swings, and ADHD, and a psychiatric evaluation from childhood determined that Wallace had an IQ of 56. Her court-ordered mental-competency evaluation determined that she met the diagnostic criteria for antisocial-personality disorder and had borderline intellectual functioning. It also concluded, however, that Wallace "displayed deceitfulness as she clearly malingered severe mental illness based on her test results and her highly bizarre description of psychotic symptoms."

At the conclusion of the sentencing hearing, the district judge determined that the minor witness was credible and Wallace was not. The judge also discussed the presentence report (PSR) prepared by the Probation Office with the prosecutor and defense counsel. The PSR recommended a total offense level under the Sentencing Guidelines of 39, with a criminal history category of I. The advisory Guidelines range was 262–327 months of imprisonment, with a statutory maximum of life in prison. Included within this range were two separate sentencing enhancements that are relevant to this appeal: first, the PSR recommended a two-level enhancement because Wallace "unduly influenced a minor to engage in prohibited sexual conduct," U.S.S.G. § 2G1.3(b)(2)(B); and second, the PSR recommended an additional two-level enhancement because Wallace "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," U.S.S.G. § 3C1.1. If only one of the enhancements applied, the applicable advisory Guidelines range would have been 210–262 months of imprisonment. If

5

neither applied, the range would have been 168–210 months. Wallace's counsel objected to both enhancements before the district court.

The district judge adopted the Guidelines range of 262–327 months recommended by the PSR. Regarding the undue-influence enhancement, the judge explained that "the court should closely consider the facts of the case to determine whether [the] participant's influence over the minor compromised the voluntariness of the minor's behavior." The judge stressed that there were several examples in the record where Wallace's "influence compromised the voluntariness of the [witness's] behavior," including that Wallace told the witness to "go ahead and engage in sexual conduct" while she was having her period, which was "clearly much against her will," and gave the witness the chance to go to her chosen school and promised to buy her school supplies to convince her to prostitute. The judge concluded that the testimony by the witness and Wallace "strongly supports the proposition that the evidence weighs in favor of the determination that [Wallace] did, in fact, influence [the witness's] conduct in this setting in connection with the minor's behavior." Thus, the undue-influence enhancement applied.

Regarding the obstruction-of-justice enhancement, the district judge explained that there was an attempt by Wallace through her text messages "to cause others to be intimidated" in connection with their role in the government's investigation. The judge thus concluded that the text messages were "clearly designed to intimidate a witness." Alternatively, though he was "reluctant to go to [a] mental health evaluation for a conclusion regarding whether an individual has obstructed justice," the judge stressed that Wallace "displayed deceitfulness as she was clearly malingering." Thus, the judge concluded that Wallace also "engage[d] in conduct designed to obstruct or impede the administration of justice" and "the sentencing process" in

6

connection with her competency evaluation. Thus, for two independent reasons, the obstruction-of-justice enhancement applied as well.

Ultimately, the district judge sentenced Wallace to 216 months—or 18 years—of imprisonment, which was below the recommended Guidelines range of 262–327 months (and only six months above the range that would apply absent the relevant sentencing enhancements). On appeal, Wallace contends that this below-Guidelines sentence is improper because of the allegedly erroneous application of the sentencing enhancements for undue influence and obstruction of justice. Wallace therefore requests that her sentence be vacated and the case remanded for resentencing in view of the lower Guidelines range that would apply absent the enhancements.

II

This court reviews a criminal sentence imposed by a district court for substantive and procedural reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence will be "procedurally unreasonable" if, for example, "'the district court misinterprets the Guidelines or miscalculates the Guidelines range.'" *United States v. Byrd*, 689 F.3d 636, 639 (6th Cir. 2012) (quoting *United States v. Stubblefield*, 682 F.3d 502, 510 (6th Cir. 2012)). We review de novo the district court's legal conclusions regarding the Guidelines. *United States v. Moon*, 513 F.3d 527, 540 (6th Cir. 2008). We "'accept the findings of fact of the district court unless they are clearly erroneous and . . . give due deference to the district court's application of the Guidelines to the facts.'" *Id.* at 539–40 (quoting *United States v. Williams*, 355 F.3d 893, 897–98 (6th Cir. 2003)).

7

III

A. Undue-Influence Enhancement

Wallace first challenges the district court's application of the two-level sentencing enhancement for undue influence of a minor. Section 2G1.3(b)(2)(B) of the Guidelines prescribes a two-level enhancement if the defendant "unduly influenced a minor to engage in prohibited sexual conduct." The commentary to this section notes that in determining whether to apply the enhancement, "courts should closely consider the facts of the case to determine whether [the defendant's] influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3 cmt. n.3(B); *see also United States v. Wise*, 278 F. App'x 552, 563 (6th Cir. 2008) (same). This court has explained that "[t]he undue-influence enhancement is not limited to force, fraud, or coercion. It also reaches manipulating and preying upon a vulnerable victim." *United States v. Reid*, 751 F.3d 763, 768 (6th Cir. 2014) (internal quotation marks and citation omitted).

Wallace contends that the district court used the "incorrect legal test" by "focusing exclusively on [Wallace's] conduct" and "completely fail[ing] to address the more applicable inquiry of the voluntariness of the [minor's] behavior, and whether or not [it] was compromised by [Wallace's] actions." Appellant Br. 16, 17. Wallace is correct that "the court must engage in a victim-focused inquiry when applying" the enhancement. *United States v. Chriswell*, 401 F.3d 459, 469 (6th Cir. 2005); *see also United States v. Lay*, 583 F.3d 436, 446 (6th Cir. 2009) ("Some evidence that the minor was in fact influenced thus must appear in the record."). An examination of the record, however, including the very statements cited by Wallace in her brief, indicates that this is what the district judge did and that the judge's conclusions were supported by the testimony elicited during the sentencing hearing.

The judge began his analysis of the enhancement by quoting the exact standard laid out in the Guidelines, whereby the court must consider whether the defendant's "influence over the minor compromised the voluntariness of the minor's behavior." He then explained that there are "examples in the record where *the defendant's influence compromised the voluntariness of the minor's behavior*" (emphasis added), referring to the witness who testified at the sentencing hearing. The judge weighed the testimony of the witness against that of Wallace, and concluded that "the evidence weighs in favor of the determination that . . . *Wallace did, in fact, influence [the witness's] conduct* in this setting." (emphasis added). In doing so, the judge was entitled to find Wallace's alternative explanation of events "not credible." *Lay*, 583 F.3d at 445.

The record confirms the district judge's observations, and is "consistent with a manipulative adult's . . . relationship with a minor for the purpose of" prohibited sexual conduct. *Ibid.* For example, though the witness expressed fear of walking the streets in New Orleans after dark, she proceeded to do so alone because Wallace "got mad" and "had a very bad attitude," and the witness was afraid of what Wallace was "capable of doing" to her. Indeed, the witness had testified that she had seen Wallace "beat up" a girl for missing work, and that she herself had been threatened by Wallace "a couple of times." Moreover, when the witness "stopped liking" her work and "didn't want to walk" the streets, Wallace would make threats or promises of money and school supplies to "persuade [her] to get out there."[1] And, on one occasion, Wallace instructed the witness to engage in sex acts when she was having her period, "clearly much against her will."

---

[1] That the district judge did not specifically mention these examples in his analysis of the undue-influence enhancement does not alter our analysis. *Cf. Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 243 (6th Cir. 2004) (This court may affirm the district court's decision if correct "for any reason, including one not considered below.").

The natural inference from these statements is that the witness was in fact persuaded "to get out there" and continue prostituting for Wallace, even when she did not want to.[2]  As a result, Wallace's argument that "there is no evidence to support" the finding that Wallace "compromised the voluntariness of [a minor's] conduct" is mistaken, as is the assertion that the district court focused narrowly on Wallace's conduct and not on the effect that such conduct had on the minor.  As this court has stressed, "a district court does not err merely because, as part of 'closely consider[ing] the facts of the case,' it considers the extent to which the defendant engaged in manipulative behavior." *Lay*, 583 F.3d at 446.  Indeed, it would be difficult for a court to determine "the effect of [the defendant's] actions on the voluntariness of [the minor's] conduct," Appellant Br. 21, without examining the nature of the defendant's actions in the first place.

Wallace's focus on the witness's prior history of prostitution and desire to build a relationship with Wallace of her own free will does not change our conclusion.  That Wallace's "testimony, if believed, is consistent with a situation in which a willing minor sought out" work involving "sexual activity" does not necessarily establish that the minor here "was not unduly influenced" during the course of the relationship.  *Lay*, 583 F.3d at 445–46.  Even if the witness's history of prostitution and initial desire to associate with Wallace were relevant to establishing the voluntariness of her conduct, the enhancement would still be proper if Wallace unduly influenced the witness to engage in particular acts or to continue to engage in prostitution when she otherwise would not have.  As explained above, Wallace "started taking advantage of" the witness by, for example, instructing her to continue working while she was having her period

---

[2] Even if the witness did not actually engage in sex acts during these time periods, the Guidelines commentary establishes that "[t]he voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring."  U.S.S.G. § 2G1.3 cmt. n.3(B).

"against her will," and, on several occasions, "persuad[ing]" her to continue prostitution when she "stopped liking" her work and "didn't want to walk" the streets. Indeed, Wallace threatened to beat up the witness at least "a couple of times," which characterizes the nature of the ongoing manipulative relationship. Such conduct "qualifies as compromising the voluntariness of the victim's behavior." *Reid*, 751 F.3d at 768.

The cases relied upon by Wallace do not suggest a different outcome. In *United States v. Myers*, for example, the Eighth Circuit held that the district court did not clearly err in rejecting the enhancement, despite the rebuttable presumption, which is not applicable here, that the enhancement applies where the defendant is at least ten years older than the minor. 481 F.3d 1107, 1112 (8th Cir. 2007). The minor victim in *Myers* testified that the illicit course of conduct with the defendant was "both of [their] ideas," and that the defendant "*didn't have to do anything to convince [her]*," which supported the district court's finding that the defendant "did nothing that compromised [the minor's] volition." *Ibid.* (emphasis added). Similar to the defendant in *Myers*, Wallace argues that the minor witness here "possessed some inclination" towards sexual conduct "before she even encountered" Wallace, *ibid.*; however, the witness also testified that Wallace did several things—including making threats and promises—to convince her to engage in prostitution on certain occasions against her will. *Cf. Lay*, 583 F.3d at 446 (distinguishing *Myers*, and explaining that "[w]here evidence could be construed both for and against an argument that the minor was not influenced, the appellate court [should] defe[r] to the district court's factual findings on the question, as we do in this case").

In *United States v. Castellon*, the Tenth Circuit found that the presumption in favor of applying the enhancement was *not* rebutted, despite the defendant's arguments that he did not initiate "the first contact" in the illicit relationship and that the minor engaged in "aggressive

11

sexual behavior both in the past and in this case." 213 F. App'x 732, 738 (10th Cir. 2007). As stressed by Wallace, the court did reject "a narrow focus on either the defendant or the victim" in favor of an approach that "examine[s] all the facts in the case, which includes obviously the defendant's conduct and the victim's conduct, including her response to the defendant's conduct." *Id.* at 738 n.7. Despite Wallace's suggestions to the contrary, however, the record supports the district court's conclusions under such an approach here. As explained above, the minor witness's response to Wallace's conduct that evidenced Wallace's undue influence over her was that she engaged in certain actions, such as walking the streets alone at night, because Wallace's conduct "unrightfully . . . affect[ed]" her. *Chriswell*, 401 F.3d at 469 (internal quotation marks and citation omitted).

The record supports the conclusion that Wallace's actions unduly compromised the voluntariness of the minor witness's behavior in this case. Therefore, the district court properly applied the undue-influence enhancement.

### B. Obstruction-of-Justice Enhancement

Wallace next challenges the district court's application of the two-level sentencing enhancement for obstruction of justice. Section 3C1.1 of the Guidelines prescribes a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." "We review the district court's findings of fact for clear error, but review de novo its determination whether specific facts constitute an obstruction of justice under the sentencing guidelines." *United States v. Williams*, 709 F.3d 1183, 1185 (6th Cir. 2013). The government bears the burden of proving that the enhancement applies by a preponderance of the evidence. *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002).

12

The district judge found that this enhancement applied for two separate and independent reasons. First, the judge concluded that Wallace sent text messages "to cause others to be intimidated" in connection with their participation in the government's investigation of Wallace's conduct. Second, the judge concluded that Wallace also "engage[d] in conduct designed to obstruct or impede the administration of justice" by malingering during her competency evaluation.

The Guidelines commentary establishes that obstruction of justice can include: "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," U.S.S.G. § 3C1.1 cmt. n.4(A); "committing, suborning, or attempting to suborn perjury,"' *id.* n.4(B); or "threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction," *id.* n.4(K), among other things. The district judge found that the text messages that Wallace sent to the witness who testified at the sentencing hearing were "clearly designed to intimidate a witness." Wallace argues that the messages were merely intended to have the witness "stop lying about her," and thus that there is no evidence that Wallace "was trying to interfere in the investigation in any way" by, for example, encouraging the witness "to lie or completely stop talking to the police." Appellant Br. 29. Wallace's argument is easily rejected.

Wallace sent the messages after learning that the witness had been interviewed by the authorities and that Wallace's name was mentioned to the FBI. *Cf. United States v. Brown*, 237 F.3d 625, 628 (6th Cir. 2001) ("[T]he obstruction adjustment applies where a defendant engages in obstructive conduct with knowledge that he or she is the subject of an investigation or with the correct belief that an investigation of the defendant is probably underway.") (internal quotation

13

marks and citation omitted).[3] The witness's testimony, and the actual text of the messages, makes clear that Wallace was threatening the witness's well-being and, as Wallace herself testified, "trying to scare her" with threats of physical violence. This certainly qualifies as "threatening, intimidating, or otherwise unlawfully influencing" a witness for the purposes of the Guidelines. *See, e.g.*, *United States v. Withers*, 405 F. App'x 951, 953 (6th Cir. 2010) ("The obstruction of justice enhancement is appropriate when the defendant sent letters seeking to influence a witness's testimony."). Moreover, Wallace's conduct was clearly willful, as she intentionally sent the messages to influence how the witness interacted with the authorities during an investigation that she suspected was ongoing. *See Brown*, 237 F.3d at 628 ("'willful' . . . connotes some kind of deliberate or intentional conduct" where the defendant "had some idea that he was being investigated").

Thus, Wallace's contention that she only wanted the witness to stop lying about her misses the mark. As an initial matter, a reasonable person in the witness's position could easily have interpreted messages such as "keep my name out of your mouth . . . [or] I'm going to come beat you" as a threat to stop any cooperation with the authorities regarding the sex-trafficking operation, rather than just a threat to stop telling specific "lies" about Wallace. *Cf. United States v. Kamper*, 748 F.3d 728, 744 (6th Cir. 2014) ("A defendant has obstructed justice when his statements can be reasonably construed as a threat.") (internal quotation marks and citation omitted). In any event, even if we were to suppose that Wallace sent the messages because of a commendable dedication to truth-telling, enforcing the federal laws against making false

---

[3] Although Wallace references the district judge's statement that the relevant text messages were sent before the *indictment* in this case, Appellant Br. 26, the relevant time for the purposes of the enhancement is when the *investigation* began. *See United States v. Baggett*, 342 F.3d 536, 541 (6th Cir. 2003) ("[A] defendant who engages in obstructive conduct prior to the investigation, prosecution, or sentencing of the instant offense is not subject to the enhancement."). Wallace does not argue that her obstructive conduct occurred before the relevant investigation began.

statements does not fall within the competence of the subject of a criminal investigation. The threat of *stop lying or else* made by such an individual clearly constitutes an attempt to unlawfully influence a witness. It puts the threatened witness in the entirely untenable position of having to surmise what information the threatener might perceive to be a "lie" when deciding if and how to speak with the authorities. Obviously, this would have a chilling effect on any witness's cooperation with the government, and thus more than suffices as an "attemp[t] to obstruct or impede . . . the administration of justice." U.S.S.G. § 3C1.1.

The record supports the conclusion that Wallace sent threatening text messages in an attempt to intimidate a witness and thereby obstruct or impede the government's investigation into the offense to which Wallace ultimately pleaded guilty. Therefore, the district court properly applied the obstruction-of-justice enhancement on this basis, and we need not address the alternative ground of malingering.

IV

For the foregoing reasons, we AFFIRM the district court's sentence.