NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0695n.06

Case No. 15-6433

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 27, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JOHN HARPER FARMER, JR., | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, STRANCH, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Pursuant to a written plea agreement, Defendant-Appellant John Farmer, Jr. pled guilty to sex trafficking a minor, in violation of 18 U.S.C. §§ 1591(a) and (b). Farmer's conviction arises out of his October 2014 post of an advertisement featuring two under-aged girls, between the ages of 14 and 15, to Backpage.com, a classified advertising website with a section for adult services. The ad was entitled "College Girls Gone Wild!" and contained language indicating the girls' availability for sexual services. Farmer took the photographs used in the ad with his smart phone and directed the girls on what to wear and how to pose. Farmer agreed to plead guilty to sex trafficking a minor in exchange for the government agreeing to dismiss all of the remaining counts in the indictment. In determining the appropriate sentencing range, the probation officer recommended certain enhancements of two levels each, including an enhancement for undue influence on a minor to participate in prohibited sexual conduct, as provided for in U.S.S.G. §2G1.3(b)(2)(B) and an

enhancement for his leadership role in the offense, as provided for in U.S.S.G. § 3B1.1(c). Taking into account the enhancements and Farmer's criminal history, the corresponding advisory guideline range was 292 to 365 months' imprisonment. Farmer objected to the enhancements for undue influence and his role in the offense. The district court denied Farmer's objection to the undue influence enhancement, but sustained his objection to the leadership role enhancement, resulting in a guideline range of 235 to 293 months' imprisonment. With both parties seeking a below-guidelines sentence, the district court granted a two level downward departure pursuant to U.S.S.G. §5K1.1, resulting in a guidelines range of 188 to 235 months' imprisonment. The district court ultimately sentenced Farmer to 210 months' imprisonment. We **AFFIRM** the district court's sentence.

I.

A.

Farmer met the two under-aged girls, Jane Doe #1 and Jane Doe #2, on the night of October 13, 2014. Two weeks prior, on September 28, 2014, Jane Doe #1 ran away from home, returning on October 1, 2014. During this time, Jane Doe #1 met Maria Morales, a prostitute and Farmer's co-defendant, for the first time. Jane Doe #1's mother stated that during this time, she saw various photographs of her daughter on social media in what appeared to be a hotel room standing on a bed facing the wall, bra-less and wearing black underwear. After this incident, the mother overheard the girls discussing whether they should tell her about the "300 licks," a phrase allegedly used to refer to prostitution, and discovered a text exchange with a potential john on one of the girls' phones.

Two days later, on October 3, the Jane Does ran away again. For the first few days after leaving home the girls stayed with Kevin Pollard and Lauren McMillion, another prostitute, who responded to a Facebook message from one of the girls asking for help, suggesting that the girls prostitute themselves to earn money. Although the girls posed for provocative photographs that

were posted to Backpage.com, the girls never met any clients and were eventually forced to leave Pollard and McMillion's residence because they would not work as prostitutes.

After leaving McMillion and Pollard, the girls went to stay with Morales. Morales subsequently reached out to Farmer, seeking a place to stay and someone to provide transportation and protection while prostituting herself and the Jane Does. On the way to Farmer's home, Morales warned the girls that Farmer would beat them if they tried to leave and told them not to tell Farmer about their ages. Although the girls told Farmer that they were legally of age, Farmer admitted that he had a reasonable opportunity to observe Jane Doe #1, the only girl referenced in the plea agreement, and determine that she was not yet 18 years old. Farmer allowed the girls to stay in his home, but pressured them to engage in prostitution. He took lewd photos of the teens, including a photo where the camera was zoomed in on the girl's genitalia, and posted them to Backpage.com in an advertisement entitled "College Girls Gone Wild!" and containing an offer of sexual services at an hourly rate. He also offered the teens advice on how to carry themselves while prostituting and offered to allow the girls to keep 50% of their earnings. The girls claim that Farmer provided them with drugs and also that he would not give them drugs unless they agreed to prostitute themselves. Farmer claims that he did not provide the girls with drugs. The girls also stated that Farmer would not allow them to leave or use a phone. Farmer contends that the girls were able to leave and had access to communication, as they were left alone in the house for a period of 30 minutes and at some point during their stay sent a Facebook message to one of the girls' mothers.

On October 14, 2014, an undercover police officer responded to the ad Farmer had posted on Backpage.com. Speaking with a female, the officer arranged the meeting, the acts to be performed and the price. Jane Doe #1 did not want to participate in prostitution that night, so

Morales took her place in the meeting with the officer. Morales and Jane Doe #2 went into a hotel with the officer and were arrested. Farmer and Jane Doe #1 were arrested in his car nearby.

B.

Farmer and Morales were charged with conspiring to engage in sex trafficking by force, threat, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a), 1591(b), and 1594(c); conspiring to engage minors in sex trafficking, in violation of 18 U.S.C. §§ 1591(a), 1591(b), and 1594(c); sex trafficking by force, threat, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a), 1591(b), and 2; and sex trafficking a minor, in violation of 18 U.S.C. §§ 1591(a), 1591(b), and 2. Farmer was also charged with supplying minors with a controlled substance, in violation of 21 U.S.C. §§ 841(a) and 859. On May 6, 2015, Farmer pled guilty to sex trafficking a minor, in violation of 18 U.S.C. §§ 1591(a) and (b), in exchange for the government's dismissal of the remaining counts against him at sentencing.

Due to his guilty plea, Farmer's offense level started at 30. The probation officer then recommended three enhancements of two levels each, including enhancements for undue influence on a minor to participate in prohibited sexual conduct, as provided by U.S.S.G. § 2G1.3(b)(2)(B) and for his leadership role in the offense, as provided by U.S.S.G. § 3B1.1(c). The probation officer also recommended a two-level adjustment, pursuant to U.S.S.G § 2G1.3(d), because the indictment alleged offenses involving more than one minor victim. After factoring in Farmer's acceptance of responsibility and his prior criminal history, the probation officer calculated a recommended guideline range of 292 to 365 months' imprisonment.

Farmer objected to the enhancements for undue influence and his role in the offense, claiming that Morales was primarily responsible. Ultimately, the district court denied Farmer's

objection to the undue influence enhancement, but sustained the objection to the role adjustment. In reaching this conclusion on undue influence, the district court noted that due to the age difference between Farmer and the teens, there is a rebuttable presumption that Farmer had an undue influence over the girls. The court found that there was a radical difference in the girls' behavior before and after they met Farmer and concluded that Farmer had not overcome that presumption. Acknowledging that both parties were seeking a below guidelines sentence, the district court granted a two-level downward departure, resulting in a guidelines range of 188 to 235 months' imprisonment. Farmer was ultimately sentenced to 210 months' imprisonment.

## II.

"We review a district court's sentencing determination, under a deferential abuse-of-discretion standard, for reasonableness . . . which . . . contains both procedural and substantive components." *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007) (citations and quotations omitted); *see also Gall v. United States*, 552 U.S. 38, 41 (2007). In reviewing a sentence imposed by a district court, this Court "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *Gall*, 552 U.S. at 51. "In reviewing the district court's calculation of the Guidelines, we still review the district court's factual findings for clear error and its legal conclusion de novo." *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) (citing *Lalonde*, 509 F.3d at 763). This Court also "give[s] due deference to the district court's application of the guidelines to facts." *Buford v. United States*, 532 U.S. 59, 63 (2001); *see also United States v. Wallace*, 600 F. App'x 322, 326 (6th Cir. 2015). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United*

*States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009). So long as "a district court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court 'may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir. 1999) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985)).

### III.

Farmer argues that the district court made a significant procedural error when calculating the appropriate Guidelines range for his sentence. Specifically, Farmer alleges that the district court improperly allowed a two-level enhancement based on the court's finding that he "unduly influenced a minor to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(2)(B). In making this challenge, Farmer argues that both of the district court's findings, that there was a radical difference in the girls' behavior before and after they met Farmer and that Farmer did not rebut the presumption of undue influence, were clearly erroneous.

Section 2G1.3(b)(2)(B) of the Guidelines allows for a two-level enhancement where the defendant "unduly influenced a minor to engage in prohibited sexual conduct." In deciding whether to apply the enhancement, courts "should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3 cmt. n.3(B). Further, "[t]he voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring." *Id*. "The undue-influence enhancement is 'not limited to force, fraud, or coercion' [but] also reaches 'manipulating' and 'preying upon' a vulnerable victim." *United States v. Reid*, 751 F.3d 763, 768 (6th Cir. 2014) (quoting *United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014)).

Farmer challenges as clearly erroneous the district court's determination that "there [wa]s still a fairly radical difference in the girls' behavior once they became associated with this defendant and the behavior afterwards." Sentencing Transcript, R.102, PageID# 504. Describing the girls' conduct after meeting Farmer, the district court stated that they posed for lewd photographs, allowed themselves to be put on Backpage.com, and actually engaged in prostitution. *Id.* Farmer points to a series of facts in the record to support his argument that this was clearly erroneous. First, he notes that the girls had posed in provocative photographs before, citing the photos of one of the girls facing a wall and wearing only black underwear, which were posted to Facebook, as well as the photos taken by Lauren McMillion and Kevin Pollard, which were posted in an advertisement on Backpage.com. Pre-Sentencing Report, R.87, p. 6,7 ¶¶19, 23. Farmer also noted that the record suggests that the girls had taken steps to engage in prostitution prior to meeting him on the night of October 13, 2014. In support of this claim, he points to the text messages setting up, but then cancelling an appointment with one john, the girls' reference to "300 licks" after their first stint away from home, and Maria Morales' statements that the girls had previously engaged in prostitution. Sentencing Tr., R.102, PageID# 492.

Despite Farmer's assertions, the district court's conclusion is factually supported by the record. At the Sentencing Hearing, the government specifically noted the difference between the prior photographs taken of the girls and the photographs taken by the defendant. The defendant took photographs of the girls' bared genitalia, which is in itself sexual conduct, in addition to the photographs he took of the girls for the Backpage.com ad. Sentencing Tr., R.102, PageID# 495. This distinction supports a finding that the photographs taken by Farmer far surpass the provocativeness of the previous photographs taken of the girls. There is also evidence to support the district court's finding that the girls had not engaged in prostitution prior to meeting Farmer.

First, in the very text message exchange relied upon by Farmer, the girl cancelled the scheduled meeting with a potential john, suggesting that she did not actually engage in sexual acts with the man. *Id*. at 492. Second, there is evidence in the record that the girls actively refused to prostitute themselves prior to meeting Farmer. McMillion and Pollard, with whom the girls stayed initially, kicked the girls out after they refused to prostitute themselves. Further, even if the girls had previously engaged in prostitution, that would not undermine a finding of undue influence. This Court has determined that "the enhancement would still be proper if [the defendant] unduly influenced the witness to engage in particular acts or to continue to engage in prostitution when she otherwise would not have." *Wallace*, 600 F. App'x at 327-328. The district court's finding that the girls' behavior changed radically is plausible based on the record. Thus, the district court's finding is not clearly erroneous.

Farmer also asserts that he properly rebutted the presumption that he unduly influenced the Jane Does. The comments accompanying Section 2G1.3 state that "[i]n a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor." U.S.S.G. § 2G1.3 cmt. n.3(B). Farmer, who was 39 at the time of the trafficking incident, argues that he did not influence the girls' decision to prostitute themselves, but rather that they had already made that decision with Maria Morales prior to meeting Farmer. Sentencing Tr., R.102, PageID# 496-7. He notes that before contacting him, Morales reached out to another man who had helped her prostitute herself in the past in order to get help prostituting herself and the teens. *Id*. In addition, Farmer asserts that there is no indication in the record that he ever harmed or intimidated the girls and that when Jane Doe #1 did not want to participate in prostitution, he did not force her to

do so. Pre-Sentencing Report, R.87, p. 4 ¶¶10,11. Farmer concludes that the absence of these factors, physical harm, force, or fear, among others, sufficiently rebut the presumption of undue influence because they distinguish his case from other instances in which the rebuttable presumption has been upheld.

However, as with Farmer's previous argument, there is evidence in the record to support the district court's finding that Farmer had not rebutted the age-based presumption. The Jane Does reported that they received drugs from Farmer, but that he had refused to give them drugs if they did not engage in prostitution. Pre-Sentencing Report, R.87, p. 6 ¶¶16,17. They also reported that Farmer, who would not allow them to leave his residence, offered to allow them to split 50% of their earnings from prostitution. *Id.* In spite of Farmer's protestations of being a mere facilitator rather than an undue influence, the record reflects that these girls were troubled, indeed Farmer notes that they were on drugs when he met them (Sentencing Tr., R.102, PageID# 479, 480), and that the defendant encouraged them to prostitute themselves by offering them drugs, money, and a roof over their heads, three things particularly enticing to these teenage runaways. Farmer's attempt to shift the blame to the victims does not negate or rebut these facts. *United States v. Lay*, 583 F.3d 436, 442 (6th Cir. 2009). The district court's finding is plausible in light of the entire record. We find no clear error.

IV.

The district court's enhancement of Farmer's sentence is appropriate and **AFFIRMED**.