RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDREW GOLOBIC,

*Defendant-Appellant.*

Nos. 25-3173/3661

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:22-cr-00107-1—Michael R. Barrett, District Judge.

Decided and Filed: March 19, 2026

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Stephanie F. Kessler, KESSLER DEFENSE LLC, Cincinnati, Ohio, for Appellant. Kevin Koller, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

SUTTON, Chief Judge. Andrew Golobic worked as an agent for Immigration and Customs Enforcement. One of his responsibilities was to monitor illegal immigrants and, if need be, to recommend detention or deportation. He used that authority, regrettably, to coerce immigrants to have sex with him. Golobic impeded investigations into his behavior by exchanging lenient supervision measures for other supervisees' silence and by destroying evidence. A jury found him guilty of a wide range of federal crimes. The district court sentenced him to 144 months. We affirm.

I.

In 2015, Golobic began working in the Alternatives-to-Detention program within Immigration and Customs Enforcement. The program monitors illegal immigrants who otherwise face detention as they await immigration proceedings. Golobic's position gave him discretion over how strictly he monitored participants in the program. He could allow a participant to check in with the agency via phone or require her to wear an ankle monitor; he could allow a participant to move out of Ohio or require her to stay in the State. The program required participants to turn over their passports, which Golobic could give back to them as he wished. If participants violated program conditions, Golobic could recommend detention or deportation.

Golobic engaged in sexual conduct with at least six women he supervised, all in violation of agency policy prohibiting such behavior. In May 2020, one woman reported her sexual history with Golobic to the agency and requested a new supervisor. Federal officials interviewed Golobic. He acknowledged the relationship and his violation of agency policy.

Officials obtained a warrant to search Golobic's phone. It revealed pictures of Golobic in "various states of undress" with various program participants. R.97 at 113. Forensic investigations revealed that Golobic had recently deleted pictures, contacts of women, and a messaging app.

Before long, Golobic's other efforts to hide his behavior came to light. A program participant, Evelin, knew a woman monitored by Golobic who traveled to other States and did not have to wear a GPS monitor. The woman posted pictures with Golobic on social media, which Evelin reported to a contractor for the agency, complaining about disparate treatment. The contractor in turn told Golobic. Fearing exposure, Golobic instructed his colleague to remove Evelin's GPS monitor, hoping she would not tell his supervisors about his actions.

Officials reached out to women identified on Golobic's phone who participated in the program. One woman, Betty, accused Golobic of sexual assault. She testified that Golobic pressured her into dating him. He would appear uninvited at her home, her office, and her sister's home and insist on seeing her. When Betty ultimately agreed to go out to dinner with

him, he picked her up at home, drove her to his apartment, and had sex with her against her will. He continued to do the same several times over the course of that year.

A jury found Golobic guilty of violating Betty's constitutional rights under color of law, 18 U.S.C. § 242, obstructing a sex-trafficking investigation, *id.* § 1591(d), tampering with witnesses, *id.* § 1512(b)(3), and destroying or concealing records, *id.* § 1519. The court sentenced him to 144 months.

II.

Golobic challenges his convictions on two grounds: (1) that the district court abused its discretion by excusing an ill juror during deliberations, and (2) that the court committed plain error by allowing multiplicitous counts to go to the jury.

*Excusing a juror*. Golobic argues that the district court lacked good cause to excuse one of the twelve jurors when he became sick during deliberations. The decision receives abuse-of-discretion review. *United States v. De Oleo*, 697 F.3d 338, 342 (6th Cir. 2012).

A district court may "permit a jury of 11 persons to return a verdict . . . if the court finds good cause to excuse a juror." Fed. R. Crim. P. 23(b)(3). Good cause "encompass[es] a variety of temporary problems that may arise during jury deliberations, confronting the trial judge with the need to exercise sound discretion . . . at a particularly sensitive stage of the trial." *United States v. Ramos*, 861 F.2d 461, 466 (6th Cir. 1988) (quotation omitted). One example is a juror's illness. *United States v. Dunnican*, 961 F.3d 859, 879 (6th Cir. 2020); *United States v. Casey*, 2000 WL 1721055, at *5 (6th Cir. 2000) (per curiam); *United States v. Simpson*, 1999 WL 777348, at *3 (6th Cir. 1999).

The district court did not abuse its discretion in excusing the juror. The juror became sick and went to the Emergency Room. He received abnormal test results that required further investigation. The juror, who was a doctor, told the court that additional tests could take some time and that he likely would be admitted to the hospital. He was indeed admitted to the hospital. Before the juror became sick, the jury had already deliberated for nearly five days and a further delay until the juror received a concrete diagnosis would have burdened the remaining

jurors with uncertain benefit.  The court made a reasonable assessment of the situation and did not exceed its discretion.

Golobic claims that several out-of-circuit cases support a contrary conclusion.  Besides coming from other circuits, the cases do not contradict this conclusion even on their own terms.  In *United States v. Spence*, the district court excused a juror even though "everything [it] knew . . . indicated that the juror would be able to return in the morning."  163 F.3d 1280, 1283 (11th Cir. 1998).  Not so here.  The juror's abnormal lab results and the need for additional tests pointed toward an extended stay.  In *United States v. Patterson*, the district court "made no attempt to learn the precise circumstances or likely duration of the twelfth juror's absence." 26 F.3d 1127, 1129 (D.C. Cir. 1994).  Not so here.  The district court requested updates about the juror's health while he was at the hospital and excused him only after learning of the need for further testing.  That leaves *United States v. Araujo*, which involved a juror excused based solely on car trouble, 62 F.3d 930, 935 (7th Cir. 1995), a far cry from a serious illness.  No error occurred.

*Multiplicity.*  Golobic claims that Count 2 (obstructing a sex-trafficking investigation) was multiplicitous with Count 5 (witness tampering) and Count 6 (destruction of records in a federal investigation).  Golobic did not raise this argument below, requiring us to review it for plain error.  *United States v. Branham*, 97 F.3d 835, 841 (6th Cir. 1996).

A multiplicitous indictment raises double jeopardy concerns because it "charge[s] a single offense in more than one count."  *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008).  But those concerns disappear if the indictment charges distinct crimes, even if they arise from the same action or actions.  A "single act may be an offense against two statutes," so long as "each statute requires proof of an additional [element] which the other does not."  *Gavieres v. United States*, 220 U.S. 338, 342 (1911); *see Blockburger v. United States*, 284 U.S. 299, 304 (1932).  No double jeopardy violation arises "merely because the same evidence is used to establish more than one statutory violation if discrete elements must be proved in order to make out a violation of each statute."  *United States v. DeCarlo*, 434 F.3d 447, 455–56 (6th Cir. 2006).

No plain error occurred.  In the first place, Golobic has not identified any precedents that support his claim that the three counts, or some combination of them, are multiplicitous of the others.  That by itself dooms his claim.  *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). In the second place, each count required proof of facts that the other did not.  Count 2 required proof that Golobic interfered with the enforcement of 18 U.S.C. § 1591, an anti-sex trafficking law, between the date of his interview on June 24, 2020, through July 27, 2022, when he uttered several false and misleading statements to an agency worker.  18 U.S.C. § 1591(d). By contrast, Count 5, the witness-tampering charge, required proof that Golobic used misleading conduct to lower Evelin's reporting status on February 5, 2020, which is more than four months before the conduct alleged in Count 2.  Each charge also required evidence of a distinct element that the other did not.  Count 2 did not require the government to show that Golobic intended to prevent the delivery of information to a law enforcement officer.  *See id*.  And Count 5 did not require the government to show that Golobic specifically interfered with a sex-trafficking investigation.  *See id*. § 1512(b)(3).

Count 6 also required distinct proof—that Golobic destroyed a record in an investigation on June 24, 2020.  *See id*. § 1519.  It did not require the destroyed record to relate to a sex-trafficking investigation, as Count 2 did.  And Count 2 did not require evidence that Golobic's obstruction consisted of altering, destroying, or concealing records, as Count 6 did.

Golobic claims that *United States v. Ehle* is to the contrary.  640 F.3d 689 (6th Cir. 2011). Not so.  It held that dual convictions for possessing and receiving child pornography plainly violated double jeopardy because the Supreme Court had held that dual convictions for possessing and receiving firearms violated double jeopardy.  *Id*. at 699 (citing *Ball v. United States*, 470 U.S. 856, 864–65 (1985)).  But that shows only that plain error can be met in the abstract.  It does not show by itself, and Golobic has not otherwise shown, that we or the Supreme Court have found multiplicity in any analogous case here.  No plain error occurred.

III.

Golobic claims that, at sentencing, the district court erred by (1) applying an enhancement for obstructing investigations, (2) applying an enhancement for kidnapping,

(3) double counting his behavior, (4) relying on sentencing guidelines that ignore statutory maximums, and (5) requiring Golobic to register as a sex offender.

*Obstruction of justice enhancement.* The district court applied this two-level enhancement based on Golobic's efforts to silence Evelin after she reported one of his relationships, all of which occurred before the formal start of the federal investigation. He claims that he could not obstruct an investigation that had not yet started. Because he did not raise this argument below, we review for plain error. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). This standard requires him to show (1) an error (2) that was plain and (3) that affected his substantial rights. *Id*.

Golobic never engages with this standard. He never addresses, most conspicuously, whether it would have made any difference in his sentence. *See United States v. Page*, 232 F.3d 536, 545 (6th Cir. 2000). That is highly doubtful given that the Presentence Investigation Report said the enhancement would also apply for Count 6, which covered conduct after his investigation had begun. Golobic thus fails to make the necessary showing that the district court's application of the enhancement affected his substantial rights.

Golobic also fails to show that the district court erred. In his opening brief, he makes a 6-sentence argument that the enhancement shouldn't apply because the obstructive conduct occurred before the commencement of a formal investigation. His reply brief never engages with, or for that matter even attempts to rebut, the government's argument that a 2006 amendment to the Sentencing Guidelines overruled the Sixth Circuit precedent on which he relies.

Our circuit, it is true, previously limited the obstruction of justice enhancement to conduct taken after a formal investigation had commenced. *See United States v. Baggett*, 342 F.3d 536, 541 (6th Cir. 2003); *United States v. Boyd*, 312 F.3d 213, 217 (6th Cir. 2002). Before 2006, the guidelines required a defendant to have impeded justice "during the course of the investigation." U.S.S.G. § 3C1.1 (2005). In 2006, however, the Sentencing Commission amended the enhancement to require only that a defendant impede justice "with respect to the investigation." *Id*. § 3C1.1 (2006). In the application note to the amendment, the Commission

stated that the enhancement may cover conduct occurring "prior to the start of the investigation of the instant offense." *Id*. § 3C1.1 cmt. n.1.

Since 2006, we have recognized that the amendment allows the enhancement to apply to pre-investigation conduct. *See, e.g.*, *United States v. Vysniauskas*, 593 F. App'x 518, 532 (6th Cir. 2015); *United States v. Fisher*, 824 F. App'x 347, 358 (6th Cir. 2020); *United States v. Elliott*, 521 F. App'x 513, 518 (6th Cir. 2013). The language of the amendment says as much. Conduct may obstruct justice "with respect to" an investigation before a formal investigation begins. U.S.S.G. § 3C1.1.

There are no contrary holdings in our circuit. Since 2006, it is true, a few cases have continued to apply the pre-2006 language. But they all concerned pre-2006 conduct. *See United States v. Bazazpour*, 690 F.3d 796, 806 (6th Cir. 2012); *United States v. Walker*, 399 F. App'x 75, 86 (6th Cir. 2010). And a few other cases, it is also true, invoke our pre-2006 case law. But they all involve defendants who, for reasons of their own, did not raise any argument about the 2006 amendment. *See e.g.*, *United States v. Wallace*, 600 F. App'x 322, 329 n.3 (6th Cir. 2015); *United States v. Rudra*, No. 25-3040, 2026 WL 75323, at *5 (6th Cir. Jan. 9, 2026).

Other circuits have followed the same path. The Fifth and Eighth Circuits both limited the enhancement before 2006 but have expanded the enhancement to pre-investigation conduct since. *United States v. Diaz*, 90 F.4th 335, 345 (5th Cir. 2024); *United States v. Montanari*, 863 F.3d 775, 781 (8th Cir. 2017).

Golobic offers no explanation, or any argument, why his conduct did not obstruct justice "with respect to" this investigation. The record supports the district court's conclusion that he did. Golobic's decision to lessen Evelin's supervision was intended to thwart the eventual investigation into his unlawful actions. He admitted as much at trial, acknowledging that he did so because he feared she would report him. All in all, Golobic has not only failed to show a violation of his substantial rights, he also has failed to show any error.

*Abduction enhancement.* Golobic claims that the district court impermissibly sentenced him based on acquitted conduct by adding a four-level enhancement for abduction. *See* U.S.S.G.

§ 2A3.1(b)(5).   We review the district court's findings of fact for clear error and its legal conclusions afresh.  *United States v. Bailey*, 973 F.3d 548, 571 (6th Cir. 2020).

In applying the abduction enhancement, the district court relied on evidence that Golobic took Betty to his house to have dinner and forced her to have sex with him against her will. Golobic challenges the enhancement on the ground that the jury acquitted him of kidnapping Betty through the interrogatories on the verdict form.  *See* U.S.S.G. § 1B1.3(c) (effective November 1, 2024, "relevant conduct" under the Sentencing Guidelines "does not include conduct for which the defendant was criminally charged and acquitted in federal court").

But the jury did not acquit Golobic of abduction.  An acquittal is "any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense."  *Evans v. Michigan*, 568 U.S. 313, 318 (2013).  The jury did not have an opportunity to acquit Golobic of abduction or for that matter kidnapping because the government did not charge Golobic with abduction or kidnapping.  The jury verdict form, we appreciate, included several interrogatories, one of which asked the jurors whether Golobic's "[deprivation of rights] offense include[d] kidnapping," giving "yes" or "no" as options.  R.74 at 5.  The court instructed the jury to answer the questions only if they found Golobic guilty of depriving Betty of rights under color of law, R.74 at 5, and to respond "no" unless they came to a unanimous agreement of "yes," R.135 at 26. The jury responded "no" to the kidnapping interrogatory.  R.74 at 5.  But this does not amount to an acquittal, because the response to the interrogatory could merely reflect that a single juror disagreed that kidnapping occurred.  The jury did not unanimously find, as it must for an acquittal, *see* Fed. R. Crim. P. 31(a), that the government could not prove a charged offense and thus did not make a decision about criminal liability for kidnapping.  *See Evans*, 568 U.S. at 318.

The enhancement, moreover, did not affect Golobic's sentence anyway.  Even without the four-level enhancement, his total offense level would have been 42 and his advisory guidelines range still would have been 360 months to life.  All of this was well above the district court's ultimate sentence of 144 months, a downward variance that the judge explained would take into account Golobic's policy arguments about kidnapping and abduction.

Last of all, the jury instructions asked whether Golobic "kidnapped" Betty, which is distinct from the "abduction" required by the sentencing enhancement. Kidnapping, as defined by the jury instructions, required "seiz[ing], confin[ing], ke[eping], or detain[ing Betty] without her consent for the purpose of sexual gratification." R.75 at 28. The abduction sentencing enhancement asks only whether Betty "was forced to accompany [Golobic] to a different location." U.S.S.G. § 1B1.1 cmt. n.1(a). No error occurred.

*Impermissible double counting.* Golobic claims that the court applied three enhancements for the same behavior. We review such claims with fresh eyes. *United States v. Clark*, 11 F.4th 491, 494 (6th Cir. 2021).

"Double counting occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (quotation omitted). The sentencing guidelines permit more than one enhancement for the same crime in view of the different circumstances that often undergird crimes. In *United States v. Volkman*, as an example, we permitted an enhancement for the use of special skills (because the defendant was a doctor) and an enhancement for vulnerable victims (because the victim was a drug-addicted patient) for the same crime. 797 F.3d 377, 399 (6th Cir. 2015). We held that the enhancements turned on different aspects of the crime—the nature of the defendant and the nature of the victim—and thus did not impermissibly double count. *Id*.

The district court did not impermissibly double count when it applied several enhancements with respect to Golobic's conviction of depriving Betty of her constitutional rights. The underlying charge for calculating Golobic's guideline range was "Criminal Sexual Abuse." R.96 ¶ 50. The district court added several enhancements based on the scope and nature of the crime: (1) an enhancement for committing a crime under color of law because Golobic worked for the immigration agency at the time of the offense, U.S.S.G. § 2H1.1(b)(1); R.96 ¶ 53; (2) an enhancement because Betty "was in the custody, care, or supervisory control" of Golobic, U.S.S.G. § 2A3.1(b)(3); *accord* R.96 ¶ 51; and (3) an enhancement because Betty was a vulnerable and previously exploited victim who feared deportation, U.S.S.G. § 3A1.1(b)(1); R.96 ¶ 54.

The enhancements each target distinct aspects of Golobic's actions and do not cross the line into forbidden double counting. The first one punishes his abuse of federal authority. The second one punishes his exploitation of his professional control over Betty. And the third one punishes his manipulation of Betty's vulnerable circumstances to his advantage.

Golobic's federal authority, it is true, gave rise to his supervisory role, and his supervisory role arose in this instance due to Betty's illegal status. Even so, the enhancements still punish distinct wrongs: his abuse of his governmental authority, the vulnerability of the victim, and the nature of the relationship between the defendant and the victim and its potential for coercion and abuse. *See United States v. McCoy*, 480 F. App'x 366, 373 (6th Cir. 2012). No impermissible double counting occurred.

*Statutory maximums.* Golobic claims that the Sentencing Commission exceeded its power by drafting guidelines that allowed Golobic's conviction for Count 4 (depriving Betty of her constitutional rights under color of law) with a statutory maximum of 12 months to lead to a guidelines range that extended to a life sentence. He did not raise this argument below, and as a result he must meet the imposing strictures of plain-error review. *United States v. Barnes*, 822 F.3d 914, 924 (6th Cir. 2016).

Golobic is wrong. His guidelines range for Count 4 was limited to twelve months under U.S.S.G. § 5G1.2(b) and Application Note 3 and thus did not exceed the statutory penalties under 18 U.S.C. § 242. In addition, it bears noting that Count 4 did not drive his guidelines range by itself. It resulted from the grouping of several counts together. He never accounts for this reality and thus never rebuts this salient point. In reality, his sentence fell at or below each count's applicable statutory maximum. *Compare* R.136 at 79 (stating statutory maximums: 300 months for Count 2, 12 months for Count 4, 240 months for Count 5, and 240 months for Count 6), *with* R.136 at 75 (assigning sentence: 144 months for Count 2, 12 months for Count 4, 144 months for Count 5, 144 months for Count 6). No error, much less a plain error, occurred.

*Sex-offender status.* Golobic claims the district court should not have required him to register as a sex offender wherever he lives, works, or goes to school. 34 U.S.C. § 20913(a). A "sex offender" includes those convicted of "a Federal offense . . . under [18 U.S.C. §] 1591."

*Id.* § 20911(1), (5)(A)(iii).    The jury convicted Golobic of obstructing a sex-trafficking investigation under 18 U.S.C. § 1591(d).

Golobic has no answer to the unmistakable direction of the statute.  He gestures at the idea that he should not have to register as a sex offender because the relevant convictions consist of obstruction rather than a sexual act or sexual contact.  But he offers no textual explanation, or for that matter caselaw, why the statute does not mean what it says.

We affirm.